FILED

2022 Apr-28  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 7:21-cr-00373-ACA-JHE |
| | ) | |
| ADRIAN BENITO CARTER | ) | |

### PLEA AGREEMENT

The Government and the defendant, Adrian Benito Carter, hereby acknowledge the following plea agreement in this case:

### PLEA

The defendant agrees to (i) plead guilty to **Counts One, Three, Four, Five, Six, Seven, Nine, and Ten** of the Indictment filed in the above-numbered and captioned matter; and (ii) waive certain rights to direct appeal and collateral attack as outlined in paragraph **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraph **VII**.

### TERMS OF THE AGREEMENT

**I.    MAXIMUM PUNISHMENT**

Page 1 of 29

Defendant's Initials

The defendant understands that the maximum statutory punishment that may be imposed for being a **Felon in Possession of a Firearm**, in violation of Title 18 United States Code, Section 922(g)(1) as charged in **Count One**, is:

a.  Imprisonment for *not more than 10 years*;

b.  A fine of not more than $250,000, or,

c.  Both (a and b);

d.  Supervised release of not more than 3 years; and

e.  A special assessment of $100.

The defendant understands that the maximum statutory punishment that may e imposed for **Traveling Across State Lines in furtherance of Engaging in the Business of Dealing in Firearms without a License**, in violation of Title 18 United States Code, Sections 922(a)(1)(A) and 924(n) as charged in **Count Three**, is:

a.  Imprisonment for *not more than 10 years*;

b.  A fine of not more than $250,000, or,

c.  Both (a and b);

d.  Supervised release of not more than 3 years; and

e.  A special assessment of $100.

Defendant's Initials

The defendant understands that the maximum statutory punishment that may be imposed for **Falsifying Federal Firearms Licensee Records**, in violation of Title 18 United States Code, Section 924(a)(1)(A) as charged in **Counts Four, Six, Seven, and Nine**, is:

a. Imprisonment for *not more than 5 years*;

b. A fine of not more than $250,000, or,

c. Both (a and b);

d. Supervised release of not more than 3 years; and

e. A special assessment of $100.

The defendant understands that the maximum statutory punishment that may be imposed for **Making a False Statement During the Purchase of a Firearm**, in violation of Title 18 United States Code, Section 922(a)(6) as charged in **Counts Five and Ten**, is:

a. Imprisonment for *not more than 10 years*;

b. A fine of not more than $250,000, or,

c. Both (a and b);

d. Supervised release of not more than 3 years; and

e. A special assessment of $100.

Page 3 of 29

Defendant's Initials

## II.    FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

### Count 1

Adrian CARTER pled guilty on November 16, 2020, in Tuscaloosa County to Carrying a Pistol without a Permit.  That conviction stemmed from a traffic stop on November 4, 2020, in Tuscaloosa where CARTER constructively possessed a loaded CZ 9mm pistol. CARTER was pulled over for speeding and driving without headlights. CARTER was arrested for an outstanding warrant and provided consent to search his car. Officers found the firearm under the driver's seat.  CARTER was provided *Miranda* on the scene and said that, although the gun was not his, he knew it was there; he was the last person to touch it; and he did not have a pistol permit. CARTER told SA Brantley during his February interview (discussed in detail below) that he bought the gun from "some young kid on the west side" who sent people to the store to straw purchase firearms. CARTER knew of his felony Possession of Forged Instrument, Second Degree, conviction in New York. However, he said it should be a youthful offender conviction.  Court documents and plea transcripts in Albany Court Case Numbers 16-200 and 27-8264 prove otherwise and prove that he

Page 4 of 29

Defendant's Initials

has an additional felony conviction for Attempted Possession of Forged Instrument, Second Degree.

### Initiation of the Firearms Trafficking Investigation

At approximately 4:21 a.m. on December 31, 2020, while responding to a dispatch call, Hampden Township Police Department Officer McIntyre saw a suspicious vehicle1 backed into a parking spot in the far corner of the Turkey Hill gas station parking lot in Enola, Pennsylvania, with only its rear tail lamps illuminated. After finishing with the original dispatched call, he returned through the area of the Turkey Hill gas station at approximately 5:07 a.m. to find the same vehicle in the same spot with its rear lights still on.

Upon approaching the vehicle, Officer McIntyre noticed the rear passenger tire was flat, and the vehicle displayed a New Jersey temporary tag. Officer McIntyre approached the driver's side door to find Adrian Benito CARTER in the driver's seat. CARTER rolled down the window, and Officer McIntyre immediately smelled the odor of burnt marijuana coming from inside the vehicle. There were four people inside the vehicle. CARTER stated that they had all been smoking marijuana inside the vehicle but that they smoked it all. He stated that his tire went flat on the

---

1 It was suspicious to the officer because of the way the vehicle was parked, the time of day, the fact that the rear lights were on but not the headlights

Defendant's Initials

way to New York from Tuscaloosa, Alabama, so he parked the vehicle there for the night until the tire store opened in the morning. Officer McIntyre asked CARTER to get out of his vehicle so he could speak to him privately and investigate further. When asked about the New Jersey temporary tag, CARTER stated that he just purchased the vehicle in New York, and the person who sold it to him put it on the vehicle. CARTER stated that he left his newborn baby and fiancé in Alabama on December 24, 2020, to go see his friends in New York, drove the friends down to Alabama for a few days, and was driving them back to New York when they got the flat tire.

Officer McIntyre did not believe CARTER's version of events. Suspicious of drug trafficking, he requested additional officers' assistance. CARTER provided consent to search his vehicle and signed a consent to search form. Officer McIntyre did not get far in his search of the trunk, however. The passengers and CARTER were visibly nervous and fidgety when Officer McIntyre started to search the luggage in the trunk, then CARTER withdrew consent. The officers towed the vehicle and immediately applied for search warrants, which yielded marijuana, drug paraphernalia, 7 firearms, and assorted ammunition among other things. No one in the vehicle had a pistol permit. Two of the recovered firearms were recently

Defendant's Initials

purchased in Tuscaloosa, Alabama: a Jimenez 9mm, purchased 4 days prior by La'darrius Whitehead, and a Taurus 9mm, purchased 41 days prior by Ryneisha Robinson.

The HTPD contacted ATF who responded to the jail and interviewed CARTER, post-*Miranda*. CARTER gave consent to search his cell phone. The ATF agents in Pennsylvania contacted ATF agents in the NDAL. ATF SA Kris Brantley took over the investigation from here.

### Firearms Trafficking Scheme (generally)

On February 16, 2021, ATF SA Brantley traveled to Cumberland County Prison in Carlisle, Pennsylvania, to interview CARTER. Post-*Miranda*, CARTER said that he is from New York, and everyone knows that. The people in New York would typically send him money via CashApp prior to the firearms being purchased in Tuscaloosa. CARTER stated that the 7 firearms he had on December 31 were purchased in Tuscaloosa and destined for New York.

### Counts 4, 5, 6, 7, 9, & 10

Laquetta Hall worked at Wade's Jewelry & Pawn during September 2020 through December 2020 when CARTER was trafficking firearms to New York. She was implicated by CARTER, Whithead, Aaron Taylor, Dean, and Neal during their

Page 7 of 29

Defendant's Initials

interviews with SA Brantley. They all believed that she knew they were buying firearms for CARTER because she would often have the firearms pulled and ready for sale, along with the ATF Form 4473, when they entered the store. Hall instructed them on how to answer the questions on the ATF Forms 4473 to complete the sales. Through the examination of text messages on CARTER's phone, SA Brantley determined that during CARTER's first encounter with Hall, he typed a note on his cell phone on September 22, 2020, that read, "Now look I just came home from prison in 2018 and I know I got this lil forgery on my record so can I get my brother to come get this for me in the morning be teen [sic] me and you yes." He left the store, and less than one hour later, he texted Hall with names of people and guns they would buy. She and CARTER continued to communicate through text messaging about the store's inventory and pricing. She would even send photos of what was available. CARTER would tell her which firearms to set aside and who he was sending to purchase each firearm. Hall would text CARTER to let him know when ATF had been in the store reviewing video or investigating other people. She warned him when some of his people had to wait before purchasing more firearms because it would look too obvious when she sold too many firearms to one person back-to-back.

Page 8 of 29

Defendant's Initials

Hall agreed to a noncustodial interview with SA Brantley. She stated that she remembered Carter's ID being from New York, and that was her reason for not selling him guns. She denied remembering her first encounter with CARTER and the note about his felony conviction. Hall provided consent to search her phone. She tried at one point to claim that she thought CARTER was just sending her business. CARTER never paid her, but she made 2% commission on each gun she sold. However, after confronting Hall with text messages, she ultimately said she knew she was not supposed to sell guns to CARTER through straw purchasers, but she needed the numbers and commission to survive.

Executed ATF Forms 4473 corroborate the sales of firearms to Dean, Chandler, Neal, and Whitehead. Although question 21(a) was answered, "yes," all parties involved knew that each firearm was purchased for CARTER.

Christopher Dean provided SA Brantley a voluntary noncustodial interview. Dean admitted to buying 8 firearms[2] for CARTER between September 2020 and December 2020. ATF Forms 4473 corroborate the purchases. Text messages between Dean and CARTER reveal their relationship and the nature of their

---

[2] Dean purchased a (1) Taurus .38 special revolver from Wade's Jewelry & Pawn on 9/22/20; (2) & (3) two SCCY 9mm pistols from Wade's Jewelry & Pawn on 9/25/20; (4) a Glock 9x19 caliber pistol from Academy Sports on 9/25/20; (5) a Ruger 5.7x28 pistol from Woods & Water, Inc. on 9/30/20; (6) a Glock .40 caliber pistol from Wade's Jewelry & Pawn on 10/12/20; (7) a Springfield 9mm pistol from Woods & Water, Inc. on 11/3/20; and (8) a Ft/Ean 9x19 caliber pistol from EZ Pawn on 12/10/20.

Defendant's Initials

agreement for Dean to purchase guns for CARTER. CARTER paid Dean about $150 per gun in cash or via CashApp. Dean would get $100 to go to the store and the remaining $50 once he delivered the firearm to CARTER. Dean believed that CARTER could not purchase firearms for himself because he had an out of state driver's license. Dean admitted to lying on the ATF Form 4473 but said the lady (Laquetta Hall) walked him through the forms and told him what to check. However, Hall was not the salesperson for every firearm he purchased for CARTER.

The two firearms Dean bought from Hall for CARTER on September 25, 2020, were a SCCY, 9mm pistol, bearing S/N C007185, and a SCCY, 9mm pistol, bearing S/N 919361. He also purchased a Ruger5.7x28 caliber pistol, bearing S/N 641-65319, on September 30, 2020, from Woods & water. Specifically, Dean lied on question 21(a) on both ATF Forms 4473 when he answered that he was the actual transferee/buyer of the firearms when, in fact, the actual transferee/buyer was CARTER.

Rikela Chandler gave SA Brantley a voluntary noncustodial interview at her apartment. Chandler admitted that she bought five firearms[3] for CARTER between

---

[3] Chandler purchased a (1) Taurus .380 caliber pistol and (2) a Masterpiece Arms 9mm pistol from Wade's Jewelry & Pawn on 8/25/20; (3) a Glock .380 pistol at Wade's Jewelry & Pawn on 9/22/20 from Laquetta Hall; (4) a Glock .40 caliber pistol at Wade's Jewelry & Pawn on 10/2/20 from Hall; and (5) a Springfield 9mm pistol at Woods & Water, Inc. on 10/2/20

Defendant's Initials

August 25, 2020, and October 2, 2020. ATF Forms 4473 corroborate the purchases. Chandler admitted that she lied on question 21(a) on all five forms. Question 21(a) asks, "[A]re you the actual transferee/buyer of the firearm(s) listed on this form . . .?" Chandler confirmed that Facebook messages between herself and CARTER were about her buying the firearms for CARTER. CARTER typically paid Chandler $20 and/or marijuana for buying each gun. Chandler stated that she assumed CARTER was taking the firearms to New York, but he never told her that. She knew that La'darrius Whitehead was also buying firearms for CARTER. Hall sold Chandler a Glock .40 caliber pistol on October 2, 2020. Text message conversations between CARTER and Hall and CARTER and Chandler corroborate the purchase for CARTER. Hall also sold Chandler a Glock .380 pistol on September 22, 2020.

Tyler Neal gave SA Brantley a voluntary noncustodial interview. Neal admitted that he bought six firearms[4] and ammunition for CARTER between September 25, 2020, and November 3, 2020. ATF Forms 4473 corroborate the purchases. One of the firearms Neal purchased for CARTER on November 3, 2020, a Glock 9mm pistol, was recovered in New York on January 13, 2021. CARTER

---

[4] Neal purchased a (1) Masterpiece Arms 9mm pistol at Wade's Jewelry & Pawn on 9/25/20 from Hall; (2) a Smith & Wesson 9mm pistol at Woods & Water on 10/3/20; (3) a Century Arms 7.62x39 pistol at Wade's Jewelry & Pawn on 10/12/20 from Hall; (4) a Glock .22 caliber pistol at Gun & Ammo, LLC, On 10/23/20; (5) a Smith & Wesson .40 caliber pistol and (6) a Glock 9mm pistol from Guns & Ammo, LLC, on 11/3/20.

Page 11 of 29

Defendant's Initials

paid Neal $30-$50 through CashApp and sometimes marijuana and money for each firearm Neal bought for CARTER. Neal did not know at first that CARTER was selling the firearms in New York but eventually found out and ceased purchasing for CARTER. CARTER told Neal that he had been arrested before, which was why he could not buy the firearms himself. Neal said that Hall knew the firearms were for CARTER and that she would have the firearm pulled and ready, along with an ATF Form 4473 before he entered the FFL. Neal saw La'darrius Whitehead purchase a couple of firearms for CARTER before at EZ Pawn in November 2020. Neal admitted that he lied on ATF Form 4473 on question 21(a) on October 12, 2020, when he purchased a Century Arms 7.62x39 pistol from Hall at Wade's Jewelry & Pawn. NEAL confirmed that text message conversations between him and CARTER were about NEAL purchasing firearms for CARTER.

Officers recovered a Jimenez 9mm pistol, bearing S/N 348830, during the search of CARTER's vehicle in Pennsylvania on December 31, 2020. An E-trace conducted on this firearm showed La'darrius Whitehead as the original purchaser. He purchased the firearm on December 23, 2020, from EZ Pawn. Whitehead provided SA Brantley a post-*Miranda* interview. He stated that he knew CARTER could not purchase guns and that CARTER was taking the guns to New York to sell.

Page 12 of 29

Defendant's Initials

He started buying guns for CARTER in October 2020 and bought approximately 5 for CARTER. ATF Forms 4473 corroborate the purchases. Whitehead stated that CARTER paid him between $100-$200 for each gun he bought for him. In reference to the recovered Jimenez, Whitehead said that CARTER met him at EZ Pawn on the day he purchased the gun. Whitehead also rented a car for CARTER on one occasion for him to travel to New York. CARTER told Whitehead to use Laquetta Hall when purchasing guns at Wade's Jewelry & Pawn. Hall would have the firearms ready for him at the store, and all he had to do was pass the background check. Whitehead stated that his sister, Rikela Chandler also straw purchased for CARTER. Whitehead admitted he lied on ATF Form 4473 on question 21(a) when he bought all of the guns as he was not, in fact, the actual purchaser/transferee.

During all relevant times, CARTER was not a federally licensed firearms dealer, and he was prohibited from engaging in the business of dealing in firearms. Additionally, he did not have lawful employment, and the principal objective of his firearms trafficking venture was for his livelihood and profit. All of the firearms purchases occurred in the Northern District of Alabama.

### Other relevant conduct

Page 13 of 29

Defendant's Initials

Timothy Coleman agreed to a voluntary noncustodial interview with SA Brantley. Coleman admitted that he coordinated the purchase of a firearm for CARTER, who he knows as "New York." Coleman is a convicted felon and knows he cannot buy firearms, so he had his girlfriend, April Knox, purchase a Masterpiece Arms 9mm pistol on 12/22/20 at Guns & Ammo, LLC. ATF Form 4473 corroborates the purchase. Coleman stated that he got the money from CARTER, gave the money to Knox, and immediately delivered the firearm to CARTER himself after the purchase. CARTER paid Knox about $200 to purchase the Masterpiece Arms 9mm pistol. CARTER told Coleman he could not buy a firearm himself because he needed to get his ID fixed.

April Knox agreed to a voluntary noncustodial interview with SA Brantley. She admitted to purchasing the Masterpiece Arms 9mm pistol on 12/22/20 from Guns & Ammo for CARTER, who she knew as "New York." Knox stated that CARTER told her he could not use his ID, but she did not know he was going to resell the gun or take it to New York. Knox stated that CARTER paid her $200 to straw purchase the firearm.

Aaron Taylor provided SA Brantley a noncustodial interview. Taylor stated that he purchased 5 firearms for CARTER between August 31, 2020, and October

Defendant's Initials

13, 2020. ATF Forms 4473 corroborate the purchases. CARTER would pick up Taylor, drive him to the FFLs to purchase the firearms, and then drive Taylor back to his apartment. CARTER paid Taylor $150-$200 every time he bought for CARTER. Additionally, CARTER supplied Taylor the cash to buy the firearms. Although Taylor did not know why CARTER could not purchase firearms or what CARTER was doing with them, he admitted that it was reasonable to believe that the firearms might end up on the street. Taylor said he quit buying for CARTER in October 2020 because something did not feel right to him. Taylor implicated Hall as the employee at Wade's Jewelry & Pawn who was CARTER's connection and stated that she instructed him on how to fill out the ATF Form 4473. He denied reading the form when he was purchasing the firearms and did not know it was illegal to buy firearms for someone else.

Darron Taylor provided SA Brantley a post-*Miranda* custodial interview. D. Taylor admitted that he is a previously convicted felon and the ex-boyfriend of Chasity Bell. D. Taylor solicited Bell to purchase two firearms for CARTER: a German Sports Gun .22 caliber pistol on November 10, 2020, which officers recovered during a traffic stop of K.M., and a Jimenez .380 caliber pistol on November 10, 2020, which was recovered in New York on March 3, 2021. CARTER

Defendant's Initials

was on FaceTime with D. Taylor when D. Taylor and Bell were inside EZ Pawn. CARTER told them which firearms to buy. D. Taylor stated that CARTER returned the German Sports Gun to him because he could not sell it so he gave it to K.M. to whom he owed money. CARTER kept the Jimenez. The plan was for CARTER to give D. Taylor half of the profit from selling the two firearms purchased by Bell. D. Taylor and Bell were both present when they gave the firearms to CARTER. CARTER paid D. Taylor cash, marijuana, or both for finding CARTER firearms, so D. Taylor put sellers in touch with CARTER. D. Taylor estimated arranging straw purchases for CARTER approximately six times. Numerous Facebook messages between CARTER and D. Taylor further establish their straw purchasing enterprise. Bell lied on question 21(a) on the ATF Form 4473 when she said that she was the true transferee/buyer. CARTER, Bell, and D. Taylor all knew the firearms were purchased for CARTER.

The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.

ADRIAN BENITO CARTER

Page 16 of 29

Defendant's Initials

### III.    RECOMMENDED SENTENCE

Subject to the limitations in paragraph **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

(a)    That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one (1) level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

(b)    That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the **low end** of the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

(c)    That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

Defendant's Initials

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

(e) That the defendant pay a special assessment of $800, the said amount due and owing as of the date sentence is pronounced.

## IV.   WAIVERS

### A. ADMISSIONS IN PLEA AGREEMENT

In consideration of the recommended disposition of this case, I, ADRIAN BENITO CARTER, hereby understand, acknowledge, and agree that, upon signing of this plea agreement, the facts that I have admitted under this plea agreement as set forth above, as well as any facts to which I admit in open court at the plea hearing, shall be admissible against me under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and I expressly waive my rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts I have admitted in conjunction with this plea agreement.

### B. STATUTE OF LIMITATIONS WAIVER

In consideration of the recommended disposition of this case, I, ADRIAN BENITO CARTER, hereby understand, acknowledge, and agree that if this

Plea Agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, et seq. that includes the passage of time from and including the date of this Plea Agreement until and including the date of entry of any order setting this Plea Agreement aside.

### C. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, ADRIAN BENITO CARTER, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

Defendant's Initials

(a)   Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b)   Any sentence imposed in excess of the guideline sentencing range determined by the Court at the time sentence is imposed; and

(c)   Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, ADRIAN BENITO CARTER, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
ADRIAN BENITO CARTER

## V.    UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are advisory in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that

Defendant's Initials _____

pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.    AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.    VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this Plea Agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this Plea Agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the Plea Agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of

Defendant's Initials

the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX. COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

Defendant's Initials

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X.    AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or

Defendant's Initials

relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII. FORFEITURE

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Federal Rule of Criminal Procedure 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement. The defendant

Defendant's Initials

acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this **Indictment** and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

## Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding

Defendant's Initials

upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.


## XIII. IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

Defendant's Initials

immigration consequences that plea may entail, even if the consequence is automatic

removal from the United States.

## XIV. DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this Plea Agreement consisting

of 29 pages. I have discussed the case and my constitutional and other rights with

my lawyer. I am satisfied with my lawyer's representation in this case. I understand

that by pleading guilty, I will be waiving and giving up my right to continue to plead

not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront,

cross-examine, or compel the attendance of witnesses, to present evidence on my

behalf, to maintain my privilege against self-incrimination, and to the presumption

of innocence. I agree to enter my plea as indicated above on the terms and conditions

set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the

past 48 hours except as stated here:

Defendant's Initials

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Plea Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Plea Agreement, both individually and as a total binding agreement.

4/27/22
DATE

ADRIAN BENITO CARTER
Defendant

## XV.  COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses.  My client has conveyed to me that my client understands this Plea Agreement and consents to all its terms.  I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment.  I concur in the entry of the Plea Agreement on the terms and conditions set forth herein.

4/27/22
DATE

ROBIN ROBERTSON
Defendant's Counsel

## XVI.  GOVERNMENT'S ACKNOWLEDGMENT

Defendant's Initials

I have reviewed this matter and this Plea Agreement and concur that the plea

and disposition set forth herein are appropriate and are in the interests of justice.


Prim F. Escalona
United States Attorney


4/18/22
DATE

*Brittney L. Plyler*

**BRITTNEY L. PLYLER**
Assistant United States Attorney